FILED

JUN 0 3 2013

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| KATRINA ROBERSON, | ) | JURY DEMAND |
| | ) | |
| Plaintiff, | ) | Docket No. 1:13-cv-182 |
| | ) | |
| v. | ) | Judge Mattice/Lee |
| | ) | |
| CHATTANOOGA-HAMILTON COUNTY | ) | Magistrate Judge_____ |
| HOSPITAL AUTHORITY, also known as | ) | |
| ERLANGER HEALTH SYSTEM and doing | ) | |
| Business as ERLANGER MEDICAL CENTER | ) | |
| | ) | |
| Defendants. | ) | |

## *PRO SE* COMPLAINT

For my Complaint and causes of action against the Defendant, Chattanooga-Hamilton County Hospital Authority, which is also known as Erlanger Health System and does business as Erlanger Medical Center, I hereby state and allege as follows:

### I. PARTIES

1. I am a black, female citizen of the State of Ohio, and I reside in Ohio.

2. To the best of my knowledge, the Defendant is a Tennessee not-for-profit corporation with its principal offices and registered agent at 975 East 3rd Street, Chattanooga, Tennessee 37403-2147.

3. To the best of my knowledge, the Defendant can be served with process through Pam Varnell, who is listed as its registered agent. Ms. Varnell can be served at the Defendant's principal offices, 975 East 3rd Street, Chattanooga, Tennessee 37403-2147.

## II. VENUE AND JURISDICTION

4. To the best of my knowledge, this federal Court has subject matter jurisdiction to hear my lawsuit, because I am suing the Defendant under the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* Also to the best of my knowledge, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear any claims I am making under Tennessee law.

5. This Court is the appropriate venue for this action, because the Defendant is located in Chattanooga, Tennessee..

6. I, a black female, was employed by the Defendant as a vascular sonographer from 2006 to 2011. I worked in the Defendant's facility at the address listed above. I worked on a full time basis, earning approximately $60,000.00 per year, including pay earned from working "call back" hours.

7. I was qualified to do my job, and at all times, I performed my job well. Prior to February of 2010, I had not received any formal disciplinary action, except for two (2) written warnings.

8. In February of 2010, the Defendant assigned Debra Fitzpatrick, a White female, to supervise my department.

9. When she took over my department, Ms. Fitzpatrick told the staffers in my department that our disciplinary records and attendance records would be "wiped clean." This meant that any days reported as "tardy" would be deleted and the attendance tallies would be reset.

10. I commuted from Rome, Georgia to work. I was recorded by Ms. Fitzpatrick as tardy to work if I were so much as one minute late to work. My White co-workers, most of

whom actually lived in or around Chattanooga, would report several minutes late, but were not written up as "tardy."

11. On July 16, 2010, Ms. Fitzpatrick placed me on a probationary period for "excessive tardiness," and relied on attendance records she had told me were "wiped clean" to get to the number of tardy days needed to put me on probationary status. I then filed a discrimination complaint with Defendant's human resources representatives, Jan Gentry (a white female) and Yvonne Harris (a white female). As I understand it, the Defendant investigated the complaint, and suspended Ms. Fitzpatrick in late July or early August of 2010.

12. After Ms. Fitzpatrick served her suspension, she retaliated against me.

a. In October of 2010, a white female employee verbally abused me in front of a patient. When Ms. Fitzpatrick called a meeting to discuss the incident – nearly two months later -- Ms. Fitzpatrick threatened me by saying, "you know I can terminate you if I want to, during your probationary period." Only after that threat did I learn that the Defendant had never overturned my discriminatory probationary period. I reported Ms. Fitzpatrick's threat to the Defendant's human resources department, which did not address the issue to prevent future retaliation.

b. At one point, Ms. Fitzpatrick put me under surveillance, with a white male shift supervisor, "Bill," while I was working "on call." I requested another meeting with the Defendant's human resources department. When confronted, "Bill" claimed a doctor in the Clinical Decisions Unit complained about me. I checked on this allegation myself, and it was false, but Ms. Fitzpatrick documented the false complaint to build a record for my termination.

c. One day in June of 2011, I attended to a patient undergoing a neck procedure. The patient happened to be the father of another supervisor, who herself was a friend of Ms. Fitzpatrick. Her father complained about the amount of time it took to undergo the procedure, and I promptly processed him out of my department after the procedure was completed. The patient's daughter and Ms. Fitzpatrick initiated a complaint against me, even though I had done nothing wrong.

d. On August 10, 2011, I filled in with another employee during the 7 a.m. to 5 p.m. working shift. The patient requisition orders I needed for my shift had not been properly prepared by an administrative assistant, so I was delayed in finishing the requisitions and other tasks, including my "portable studies" task. Later on, my immediate supervisor, Ms. Creek (a white female and childhood friend of Ms. Fitzpatrick) singled me out for being behind. Ms. Creek ordered me

to complete my "portable studies," and as a result I could not finish my other tasks. When I finished the "portable studies," Ms. Creek singled Ms. Roberson out for not completing her other tasks (which were behind due to the administrative assistant's delay), and for not clocking out, which I was not required to do at that time. Ms. Creek verbally abused me, and demanded that I take e-mail my work time to her, which the Defendant rarely if ever requires. I was being discriminated against, and I complained to Ms. Fitzpatrick, who responded by claiming I was "paranoid." I cited Ms. Fitzpatrick's prior suspension for discrimination as proof I was not paranoid.

13. After complaining to Ms. Fitzpatrick, I again complained to human resources. A few days after my human resources complaint, on August 22, 2011, by and through the actions of Ms. Gentry, Ms. Harris, Ms. Fitzpatrick and Ms. Creek, the Defendant terminated me. The stated reasons were my alleged failure to complete her portable studies or clock out, allegedly creating office discord and insubordination, all on August 10, 2011. The Defendant terminated me despite knowing of my numerous complaints of discrimination against Ms. Fitzpatrick and Ms. Fitzpatrick's conspiracy to retaliate against me. The Defendant did nothing to stop the racial discrimination against me after being notified numerous times. On August 22, 2011, EMC, by and through the actions of Ms. Gentry, Ms. Harris, Ms. Fitzpatrick and Ms. Creek, terminated Ms. Roberson. The stated reason was Ms. Roberson's failure to complete her portable studies, failure to clock out, creating office discord and insubordination on August 10, 2011. The Defendant terminated me despite the fact that it knew of my numerous complaints of discrimination against Ms. Fitzpatrick and Ms. Fitzpatrick's conspiracy to retaliate against me. The Defendant did nothing to stop or remedy the discrimination and retaliation after being notified numerous times.

14. After being terminated, I was out of work for approximately one (1) year and suffered a significant economic loss, as well as mental and emotional distress.

15. The Defendant's termination of me, when compared to its treatment of my white co-workers, led me to conclude I was a victim of racial discrimination. I then filed a Charge of Discrimination with the Equal Employment Opportunity Commission (**EEOC**). A copy of the EEOC Charge is attached as **Exhibit 1.** The EEOC issued me a notice of dismissal of the EEOC Charge dated February 27, 2013. I received copies of both notices on or about March 6, 2013.

16. For the reasons stated in Paragraphs 1 through 14 of this Complaint, I claim that the Defendant violated Title VII of the Civil Rights Act, which is located at 42 U.S.C. § 2000e *et seq*. (**"Title VII"**) I am a black female entitled to protection under Title VII. I was qualified to hold the position of vascular sonographer. Through named individuals in this Complaint, Defendant wrongfully placed me on probationary status for attendance issues, retaliated against me for complaining about discrimination, and terminated me under false pretenses to cover for its racial discrimination. To the best of my knowledge, I was replaced by a white person or my duties were reassigned to white co-workers. There was no justification for that decision, and the reasons that they offered for their decision proved false. The Defendant failed to remedy the retaliation despite the fact it knew of the retaliation for months. I suffered a loss in income, mental and emotional distress, and other damages because of the Defendant's conduct. As a result, I suffered a loss in wages and benefits, mental and emotional distress, pain and suffering and other damages. So, the Defendant discriminated against me on the basis of my race in violation of Title VII, and retaliated against me in violation of Title VII.

17. For the reasons stated in Paragraphs 1 through 15 of this Complaint, I claim that the Defendant is liable to me for violations of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301 *et seq.*, because the Defendant wrongfully discriminated against me and wrongfully retaliated against me.

18. For the reasons stated in Paragraphs 1 through 16 of this Complaint, I also claim that the Defendant is liable to me for retaliation as prohibited under the common law of the State of Tennessee. The Defendant sought to retaliate against me by targeting me for termination and ultimately firing me, and their decision was triggered by my complaints of discrimination between July of 2010 and August of 2011, which I have a right to do under the United States Constitution, Title VII, the Tennessee Human Rights Act and/or the public policy of this State. My discrimination complaints were (at least) a substantial factor in the Defendant's decision to fire me. As a result, I suffered losses of wages and benefits. I also suffered (and continue to suffer) non-economic damages in the form of mental and emotional distress and pain and suffering.

**FOR ALL OF THE REASONS STATED ABOVE,** I, Katrina Roberson, seek the following relief: For the reasons stated herein, the Plaintiffs pray for the following relief:

1. I would like for this Court to issue a summons and process requiring the Defendant to file a response to this Complaint within the time period prescribed by law;

2. I would like this Court to issue a permanent injunction preventing the Defendant, Defendant and everyone associated with the Defendant from continuing to violate Title VII, the Tennessee Human Rights Act, and Tennessee common law;

3. I would like for this Court, after a trial by jury, to order the Defendant to make me whole by awarding me frontpay, backpay (plus interest), compensatory, punitive, and/or nominal damages in an amount not to exceed $500,000.00.

4. That I be given my right to a trial by jury, and after the trial of this matter, that this Court award me any other compensatory and punitive damages in an amount to be proven at

trial, which could include if appropriate reasonable attorney's fees under Title VII, the Tennessee Human Rights Act, or any other laws of the United States and the State of Tennessee.

5. I would like for this Court to assess the Defendant, with any other costs, including discretionary costs, if necessary;

6. I would ask this Court to refrain from setting any trial or pretrial dates until I have found a lawyer to represent me in this lawsuit.

7. That this Court award me any other relief as it deems fit.

Respectfully submitted,

*[signature]*

**KATRINA ROBERSON, *PRO SE* PLAINTIFF**